UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA M. M., )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>**Acting Commissioner of the** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | Case No. 21-CV-357-CDL |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.  Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.  Procedural History

On September 26, 2019, the plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R. 28). On September 30, 2019, she also filed a Title XVI application for supplemental security income (SSI) benefits. She alleges that she became disabled due to degenerative disc disease, multiple bulging discs, compact fractures in her spine, a broken neck from a 2007 car wreck, left shoulder pain, loss of feeling in left hand and left foot, falling, inability to move her left hand at times, dizziness, severe headaches, anxiety, and depression. (R. 104-105). The plaintiff was 34 years old on

the alleged onset date of July 11, 2019. She can read and write but has only a sixth-grade education. (R. 310-312). Previously, she has worked as a cashier, merchandise deliverer, and mail carrier. (R. 39).

The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing via telephone on March 25, 2021 that included testimony from the plaintiff and a Vocational Expert (VE). On April 23, 2021, the ALJ issued a decision denying disability benefits. (R. 28-41). On July 9, 2021, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 14-17). The plaintiff then timely appealed to the district court. (Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's April 23, 2021 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,

subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A. Step One

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity during the period since her alleged onset date of July 11, 2019. (R. 30). The plaintiff has insured status through December 31, 2024. *See id*.

### B. Step Two

The ALJ determined that plaintiff has the following severe medically-determinable impairments: degenerative disc disease of the cervical and thoracic spine, neuropathy, chronic obstructive pulmonary disease (COPD), major depressive disorder with anxiety, conversion disorder with psychogenic seizures, and post-traumatic stress disorder (PTSD). (R. 31). The plaintiff's hypertension, hyperlipidemia, hypothyroidism, obesity, headaches, and irritable bowel syndrome were found to be non-severe, as they do not cause more than minimal limitation in her ability to perform basic work activities. *Id*.

The ALJ found the plaintiff's alleged shoulder impairment is non-medically determinable. (R. 32). The ALJ noted the plaintiff's history of left shoulder surgery and an injury from falling in October 2020, after which the plaintiff's left arm was put in a sling

and she was instructed to take over-the-counter medication for pain. *Id*. However, the record contains no radiographic evidence of an underlying impairment, and examination records showed the plaintiff generally had a full range of motion and negative special testing, despite subjective complaints. *Id*. The ALJ found no signs, findings, or diagnoses of a shoulder impairment. *Id*.

The plaintiff's alleged epilepsy was also found not to be medically determinable. Despite some references in the record of "unspecified epilepsy, magnetic resonance imaging (MRI) and electroencephalogram (EEG) were negative," and the plaintiff does not take any anti-epilepsy medication. *Id*.

### C.    Step Three

The ALJ found that plaintiff's physical and mental impairments during the relevant period did not meet or equal the criteria for any Listing. (R. 32-34). The ALJ considered plaintiff's physical impairments in connection with Listings 1.15 (spinal disorder), 3.02 (COPD), and 11.14 (neuropathy). *Id*.

In connection with the plaintiff's mental impairments, the ALJ considered Listings 12.04, 12.06, 12.07, and 12.15. (R. 33). The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. Here, the ALJ found that plaintiff has no more than a moderate limitation in each of the paragraph B domains--understanding, remembering, or applying information;

interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 33-34).  Because plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied.

### D. Step Four

The ALJ found that plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] can occasionally climb stairs and ramps, stoop, crouch, kneel and crawl; but cannot climb ladders, ropes or scaffolds. The [plaintiff] can frequently push and pull with left upper and lower extremities and can frequently operate foot controls with the left lower extremity. She can frequently reach in all directions, handle, and finger with the left upper extremity (non-dominant). She cannot have exposure to hazards such as unprotected heights and moving machinery, and she cannot operate a motor vehicle. The [plaintiff] can perform simple, routine, repetitive work, and can occasionally interact with coworkers and supervisors but cannot interact with the members of the general public. She can sustain concentration and persistence for periods of two hours at a time, and can meet production requirements that allow her to sustain a flexible and goal-oriented pace. The [plaintiff] can perform occasional decision making and adapt to occasional changes in work setting. The [plaintiff] cannot have concentrated exposure to extreme cold, or loud noise as loud is defined in the Dictionary of Occupational Titles.

(R. 34).  The ALJ found that plaintiff's past work as a Cashier II, Merchandise deliverer, and Mail carrier were performed at exertional levels ranging from light to heavy. (R. 39). Citing the VE's testimony as to a hypothetical person with plaintiff's RFC, the ALJ found that plaintiff is unable to perform any of her past relevant work.

**E.   Step Five**

Citing the VE's testimony, the ALJ found that the plaintiff's RFC is consistent with other work existing in significant numbers in the national economy, including the following representative unskilled, light-exertion occupations:

> *Cleaner*, SVP 2, DOT # 323.687-014; 400,000 jobs in the national economy;
>
> *Marker*, SVP 2, DOT # 209.587-034; 200,000 jobs in the national economy;
>
> *Deli cutter/slicer*, SVP 2, DOT # 314.684-014; 100,000 jobs in the national economy; and
>
> *Mail clerk*, SVP 2, DOT # 529.687-186; 45,800 jobs in the national economy.

(R. 40). As such, the ALJ found that, considering the plaintiff's age, education, work experience, and RFC, she is capable of adjusting to other work, and accordingly found plaintiff not disabled at step five.

**IV.   Discussion**

The plaintiff argues that the ALJ committed reversible legal error by (1) failing to discuss significantly probative medical evidence that conflicted with the RFC determination, and (2) failing to properly evaluate medical opinions in the record. The Commissioner contends that the ALJ properly considered all of the evidence and substantial evidence supports her findings.

**A.   Objective Medical Evidence**

The plaintiff contends that the ALJ did not properly address a set of September 2019 MRI images of her thoracic and cervical spine. In determining a claimant's RFC, "[t]he

record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).  The focus of disability determination is on the functional consequences of a condition, not the mere diagnosis.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record).

The plaintiff argues that the ALJ failed to note evidence of mild central canal stenosis and actual mild flattening (i.e., compression) of the spinal cord. (Doc. 17 at 7).  However, she admits that the ALJ in fact discussed these records. *See id*. (citing R. 35)).  In finding an RFC limited to light work with climbing, postural, and additional restrictions, the ALJ noted that

> computerized tomography (CT) of the [plaintiff's] cervical and thoracic spine showed no acute abnormality or significant spondylosis, but mild multilevel loss of disc height was noted. Follow-up MRI showed degenerative changes most notable at C4-5 and C5-6 with mild foraminal stenosis on the right at C4-5 and bilaterally at C5-6. October 2020 x-rays were unremarkable. Upon examination, the [plaintiff] did have some tenderness to palpation but generally normal strength and range of motion except as discussed below. . . .

(R. 35) (exhibit citations omitted).

The ALJ further discussed the medical opinions of state agency reviewing consultants James Metcalf, M.D. and Ronald Painton, M.D. Dr. Metcalf noted that the September 2019 images showed "old mild compression [fracture] within the upper to mid-thoracic region as described. Central canal stenosis and anterior cord compression at T7-8." (R. 99). Nonetheless, Dr. Metcalf assessed a light RFC without climbing or postural limitations. (*See* R. 38). Dr. Painton also considered the same evidence and concurred with Dr. Metcalf's initial determination. (*See* R. 145). Notably, the ALJ found these opinions were "supported by rationale based on a review of the evidence available at the time of determination," but found that the record as a whole warranted "additional but not work-preclusive limitations to account for the [plaintiff's] conversion disorder." (R. 38).[1]

Another treating provider, Frank J. Tomacek, M.D. saw the plaintiff on October 19, 2020 and reviewed recent MRI films of her thoracic and cervical spine. (R. 613). As the plaintiff acknowledges, Dr. Tomacek observed "no cord compression, in my opinion," nor any acute fracture, edema in the bone, or significant disk herniations. *Id*. Dr. Tomacek further opined that the plaintiff's complaints of neck and thoracic pain appeared to be "far out of proportion to any abnormality seen on the MRI." *Id*. Despite the plaintiff's complaint of "left-sided arm pain, left foot pain, and stabbing left facial pain," Dr. Tomacek explained

---

[1]  Conversion disorder, or "functional neurologic disorder," is characterized by neurological symptoms that cannot be explained by a neurological disease or other medical condition. *See* Mayo Clinic (https://www.mayoclinic.org/diseases-conditions/ conversion-disorder/symptoms-causes/syc-20355197).

9

that "[n]one of these symptoms are explained by any findings on the MRI of her neck or thoracic region." *Id.*[2]

The ALJ's decision shows that she properly considered the medical evidence related to plaintiff's spine in assessing an RFC that limits plaintiff to a restricted range of light work. Moreover, at step three, the ALJ explained that, despite evidence of foraminal compromise in the spine, the imaging in the record "does not present clear evidence of nerve root compromise or impingement." (R. 32; *see also id*. (explaining that evidence "does not show the necessary clinical signs of muscle weakness, signs of nerve root irritation or compression, and sensory reflex reduction present in a close proximity of time" to satisfy Listing 1.15)).

The plaintiff suggests that the ALJ failed to address certain other clinical findings indicating limited spinal mobility, problems with upper and lower extremities, poor muscle tone, and trace pitting edema, mild emphysema in the upper lungs, and difficulty walking. (*See* Doc. 17 at 8 (citing portions of the record)). Contrary to this argument, the ALJ cited much of the same evidence in her decision. (*See, e.g.*, R. 35-36 (noting evidence of mild centrilobular emphysematous changes in upper lungs, neuropathy, left-sided weakness, and plaintiff's reported episodes of falling)). The ALJ explained that the evidence warranted RFC restrictions to exertion, climbing, posture, manipulation, and exposure to hazards. *Id*.

---

[2] Dr. Tomacek stated that he was "concerned about psychological overlay here," noting that when he informed the plaintiff he could not offer any further intervention, the plaintiff "broke into tears." (R. 613-614).

Even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). The plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084. The ALJ's decision reflects that she considered evidence both more and less favorable to a finding of disability. The decision explained the RFC determination with reference to specific evidence in the record. Nothing further was required.

Finally, although the plaintiff's brief but does not include any developed argument regarding the ALJ's consistency analysis, the Court has reviewed the ALJ's decision and hearing transcript and finds that the ALJ properly considered the plaintiff's subjective statements regarding her impairments, including her neck and back pain. *See* 20 C.F.R. § 404.1529(a).

### B. Opinion Evidence

The plaintiff contends the ALJ failed to adequately address the opinion of one of the plaintiff's treating providers, physician assistant (PA) Charles O'Leary. As the ALJ's decision noted, in March 2021, Mr. O'Leary completed a medical source statement (MSS) form in which he indicated that plaintiff could sit for only two hours, stand for two hours, and walk for 30 minutes in an 8-hour workday. (R. 37-38). Mr. O'Leary's MSS also assessed extensive limitations in reaching and manipulation tasks. (*See id.*; R. 822 (indicating that the plaintiff can never feel, push, or pull with either hand)). The ALJ rejected most of these restrictions in adopting the RFC determination for a limited range of light work.

11

An ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion. *See Mays v. Colvin*, 739 F.3d 569, 574-76 (10th Cir. 2014). The ALJ's decision must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 CFR § 404.1520c(b). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how she considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2). The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id.* § 404.1520c(c).

Here, the ALJ's decision addressed the weight accorded to Mr. O'Leary's opinion as follows:

> This opinion was submitted on a checkbox form with little rationale and while it is supported by an accompanying treatment note, this note is not entirely consistent with the longitudinal evidence as both the note and the opinion grossly overstate the extent of the claimant's impairments. The bulk of the evidence shows the [plaintiff] to be less limited given her mild degenerative disc disease, controlled neuropathy, unlabored respiration, and normal strength and range of motion. Accordingly, the undersigned finds this opinion unpersuasive.

(R. 37-38 (citations to exhibits omitted)).

The plaintiff argues that the ALJ relied on selective evidence in finding Mr. O'Leary's opinion was not consistent with the longitudinal evidence of record. She points to various portions of the record, arguing the ALJ failed to address them. However, the ALJ addressed much of this evidence directly in her decision. (*See, e.g.*, R. 35 (discussing Mr. O'Leary's examination notes); R. 36 (discussing MSS and treatment notes); R. 37 (same); R. 38 (same)). Other evidence cited in the plaintiff's brief, including the administrative findings of Drs. Metcalf and Painton, does not support the extent of limitations reflected in Mr. O'Leary's MSS. (*See, e.g.*, R. 97-100 (finding that plaintiff could stand or walk for six hours in a workday); R. 130 (finding evidence submitted at reconsideration stage supports RFC as written, "pain considered")). Thus, the plaintiff has not shown reversible error.

The plaintiff objects to the ALJ's reasoning, noting that MSS forms, such as the one completed by Mr. O'Leary, are relevant evidence despite their largely checkbox-based format. (Doc. 17 at 11-12). However, it was not error for the ALJ to consider the lack of rationale provided by a medical source in support of restrictions in an MSS form. The plaintiff relies on cases applying regulations that are no longer in effect and do not apply to the ALJ's decision here. (*See* Doc. 17 at 12). Moreover, the ALJ provided further explanation, noting that, Mr. O'Leary also provided treatment notes that do support his MSS, but that both the treatment note and the MSS "grossly overstate[d]" the limiting effects of the plaintiff's impairments, in light of the record as a whole. (R. 38). As such, no reversible error arises from the ALJ's reference to a "checkbox form with little rationale." (R. 38).

The plaintiff suggests that the ALJ overlooked the fact that Mr. O'Leary had treated the plaintiff extensively, over dozens of visits. (Doc. 17 at 11). For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a). Rather, the ALJ is required to consider the relevant factors. *See id*. Those factors include the medical source's relationship with the claimant, length and extent of treatment relationship, and the frequency of examinations. *Id*. § 404.1520c(b). However, the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c). Rather, only consistency and supportability must be articulated in the ALJ's decision. Here, as set forth above, the ALJ addressed both of those factors in explaining why Mr. O'Leary's opinion was unpersuasive. Accordingly, the Court rejects this argument.

As the Tenth Circuit has explained, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id*. (internal citations and quotation marks omitted). Here, the ALJ's decision addressed the reliability and supportability of Mr. O'Leary's opinion, as required, and substantial evidence supports the ALJ's conclusion. Nothing further was required. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 30th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge